*Sanders v. McKnight et al.*, No. 472-8-14 Wncv (Tomasi, J., March 10, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 472-8-14 Wncv |

| | |
|---|---|
| John Sanders,<br>       Plaintiff<br><br>     v.<br><br>Kathleen Mary McKnight,<br>Nicholas McKnigh Sanders,<br>       Defendants | |

Opinion and Order on Cross-Motions for Summary Judgment

Plaintiff has filed suit seeking a declaratory judgment as to the parties' respective interests in a parcel of land in Worcester, Vermont (the "Property"). He also seeks partition if a joint ownership is established. Defendants claim that Defendant Nicholas Sanders and Plaintiff are equal owners of the Property. Plaintiff has moved for summary judgment asking the Court to rule that Defendants have no interest in the Property and that he is the sole owner. Defendants have moved for partial summary judgment requesting the Court to determine that Plaintiff and Defendant Sanders own the Property as tenants in common. The Court makes the following determinations.

Standard

Summary judgment procedure is properly regarded as "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is

appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c), shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994).

A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts or affidavits to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628, (1991). If the non-moving party will bear the burden of proof at trial, the moving party may be entitled to summary judgment if the non-moving party is unable to come forward with evidence supporting its case. *Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989).

In assessing a motion for summary judgment, the Court views all facts and indulges all inference in favor of the non-moving party. *Price v. Leland*, 149 Vt. 518, 521 (1988). Where, as here, there are cross-motions for summary judgment, "both parties are entitled to the benefit of all reasonable doubts and inferences." *Montgomery v. Devoid*, 2006 VT 127, ¶ 9, 181 Vt. 154, 156.

Facts

The Court derives the undisputed facts from the parties' statements of fact submitted under Vt. R. Civ. P. 56(c), from the various supporting materials and affidavits filed in connection with the motion, and from the admissions made at the oral argument concerning these motions.

Plaintiff purchased the Property in 1974. Plaintiff married Defendant McKnight in 1974. In 1978, Plaintiff added Defendant McKnight to the deed as an

2

equal owner of the Property. Though neither party has attached the deed, the attorney letter summarizing the transaction notes that the parties were to hold the Property as tenants-by-the-entireties.

By 1988, the Plaintiff and Defendant McKnight had separated. Plaintiff asked her to transfer her interest in the Property back to him, but she refused. In that same year a divorce action was filed in California, which appears to have been the parties' state of residence at the time.

The California court issued a divorce decree in November 1993. While the decree legally divorced the parties, it did not address the division of assets and liabilities. Importantly for this case, it did not address ownership of the Property.

In December 2005, Plaintiff's Vermont counsel sent Defendant McKnight a quitclaim deed entreating her to convey her interest in the Property to Defendant Sanders. She did not respond.

In December 2007, Defendant McKnight quitclaimed her interest in the Property to Defendant Sanders, who is the parties' son. While there is some factual inconsistency in the record, at oral argument, Plaintiff confirmed that he was fully aware of the transfer and consented to it. Indeed, Plaintiff's counsel prepared the quitclaim deed through which the transfer was accomplished, and Plaintiff's own summary judgment submission shows that the transfer was "what he wanted." *See* Summary Judgment ("SJ") Exhibit 1.

At the time, Plaintiff hoped that the transfer would allow him to take a mortgage on the Property to obtain a loan that would allow him to extinguish all of his existing debts. As of January 2008, however, Defendant Sanders was unwilling

3

to execute the documents that would have allowed Plaintiff to encumber the Property.  *See* SJ Exhibit H.

From 2008 through 2012, Plaintiff often treated Defendant Sanders as the co-owner of the Property.  *See* SJ Exhibit H.  Plaintiff attempted to get him to pay his share of the taxes and expenses that accompanied the Property and to allow Plaintiff to encumber the Property.  Defendant Sanders contributed to those expenses only occasionally.  Plaintiff also acknowledged Defendant Sanders' status as a co-owner of the Property in letters to Defendant Sanders, *see id.*; and in a letter to a third-party bank, *see* SJ Exhibit C.  At oral argument, Plaintiff agreed that, had he been allowed to encumber the Property and Defendant Sanders had paid his share of the expenses for the Property, he probably would never have brought this case.

In 2011, Plaintiff returned to the California court with the hope of obtaining a determination as to the marital debts and assets that were not adjudicated as part of the 1994 divorce order.  He included the Property as part of his request for distribution and, subsequently, filed a motion to join Defendant Sanders in the California action due to his claimed interest in the Property.

Neither Defendant appeared in the California court.  In November 2013, Plaintiff obtained a default judgment against them (the "Default Judgment).  As part of that judgment, Plaintiff was awarded full ownership of the Property.  *See* Exhibits B & D to the Complaint.

Defendant Sanders was raised in California but has had minimal contacts with the state since then.  He is a professional musician.  Over the past eight years,

4

his contact with the state has been limited to twenty-four overnight visits to perform with his band. During each of those visits, he has stayed in California no longer than forty-eight hours.

Analysis

The competing summary judgment motions dispute the effect of the 2007 transfer and of the California Default Judgment. Based on the summary judgment record, the Court makes the following determinations.

I.    The 2007 Transfer

The propriety of the 2007 transfer could depend upon whether that transfer is to be judged according to Vermont or California law. In this instance, however, that is not the case because the result is the same regardless of which state's law applies.

Under Vermont law, only current spouses can hold property as tenants by the entireties. When a couple divorces and property so held is not otherwise accounted for, the ownership automatically transforms into a tenancy-in-common. *Preston v. Chabot*, 138 Vt. 170, 175 (1980) ("The trial court analogized the present situation to a divorce, which under Vermont law destroys the tenancy by the entirety and creates by operation of law a tenancy in common among the parties.").

California law is in accord. In California, the courts sometimes follow a "bifurcated" proceeding, which first divorces the parties and, at some later point, divides their marital property. Cal Fam. Code § 2337. The law is also clear, however, that property "left unadjudicated by [a] decree of divorce … is subject to

5

future litigation, the parties being tenants in common meanwhile." *Henn v. Henn*, 26 Cal. 3d 323, 330, 605 P.2d 10, 13 (Cal. 1980) (internal quotation omitted); *In re Marriage of Allen*, 8 Cal. App. 4th 1225, 1233, 10 Cal. Rptr. 2d 916 (Cal. App. Ct. 1992) ("[A] community asset that is left unadjudicated in the dissolution decree is subject to future adjudication and the parties, until adjudication, occupy the status of tenants in common no matter how the record title is held."). As a result, after the 1993 divorce decree, Plaintiff and Defendant McKnight held the Property as tenants in common.

Under both Vermont and California law, each co-owner in such a scenario owns an undivided one-half interest in the property and has the ability to convey or encumber that interest without the consent of the other owner. *See Martin v. Rutledge,* 94 Vt. 258, 260 (1920); *Dieden v. Schmidt*, 104 Cal. App. 4th 645, 650-51, 128 Cal. Rptr. 2d 365, 368-69 (Cal. App. Ct. 2002);[1] *see also Droeger v. Friedman, Sloan & Ross*, 812 P.2d 931, 944 (Cal. 1991) (community property during marriage cannot be transferred without consent of spouse; alternative holding would treat spouses as tenants in common); *Poulson v. Poulson*, 691 N.E.2d 504, 506 (Ind. Ct. App. 1998) (former spouses owned property not adjudicated in divorce as tenants in

---

[1] *Accord In re Foreclosure of Liens*, 922 P.2d 73, 77 (Wash. 1996) (*en banc*) ("[O]ne tenant-in-common may sell, lease, or otherwise dispose of his or her interest in the common property without the consent of the other cotenants and without their joining in the conveyance."); *Landskroner v. McClure*, 765 P.2d 189, 191 (N.M. 1988) ("Generally, a tenant in common may convey his or her own interest in the common estate to a stranger without the knowledge or approval of other cotenants."); *O'Neal v. Cooper*, 67 So. 689, 690 (Ala. 1914) ("It is, of course, universally recognized that a cotenant may convey at his pleasure his undivided interest in all the lands held in common without the knowledge or consent of his companions in interest.").

6

common; former husband who later sold the property owed former spouse compensation for her one-half interest).[2]

In light of the above, after the 1993 divorce decree, Defendant McKnight had the authority under the law of both states to transfer her one-half interest in the Property to Defendant Sanders. It follows that the 2007 quitclaim transaction between Defendants McKnight and Sanders was a valid conveyance and, as of the date of the transfer, Plaintiff and Defendant Sanders owned the Property as tenants in common.[3]

II.     The Effect of the Default Judgment

Next, the Court must address whether the Default Judgment obtained by Plaintiff in 2013 changes the straightforward analysis described above. The Court concludes that it does not.

"Normally, a foreign judgment 'is entitled to full faith and credit in the absence of a showing that that court lacked jurisdiction or acted to deprive defendant of a reasonable opportunity to be heard.'" *Hall v. McCormick*, 154 Vt.

---

[2] Since Defendant McKnight was able to transfer her interest without Plaintiff's consent, all facts concerning the motivation for the transfer and whether Defendant Sanders ever told Plaintiff that he could encumber the Property are immaterial to the present motions. Whether Plaintiff may have a cause of action against Defendant Sanders based on that alleged promise is also beyond the scope of the present case.

[3] The evidence also establishes that Plaintiff knew of the transfer, encouraged it, had his attorney draft the document that facilitated it, and did not obtain any type of ruling from the California court concerning the Property until roughly twenty years had passed since entry of the original divorce decree. While such conduct likely establishes the equitable defenses of laches, waiver and estoppel, in light of the Court's analysis of the transfer, it need not rely on such theories to conclude that the transfer was legally valid.

592, 594 (1990) (quoting *Wursthaus, Inc. v. Cerreta*, 149 Vt. 54, 58 (1987)); *In re Hanrahan's Will*, 109 Vt. 108, 117 (1937) ("In this state, the question of the jurisdiction of the [out-of-state] court to render the judgment relied upon by the contestant is open for consideration, notwithstanding the full–faith and credit clause of the Federal Constitution (article 4, § 1)."). A person seeking to preclude enforcement of a foreign judgment carries a "heavy burden." 154 Vt. at 595.

In this instance, the Court believes Defendant Sanders has met that rigorous standard because the California court lacked jurisdiction over both him and his interest in the Property. As our Supreme Court stated in *Yanmar Am. Corp. v. Crean Equip. Co.*:

> Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citations omitted). It has also long been settled that an out-of-state defendant's "minimum contacts" with the forum state "must be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id*. at 292, 100 S.Ct. 559 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

2012 VT 35, ¶ 7.

A litigant can have sufficient "minimum contacts" with the forum state either through specific acts occurring in the jurisdiction that give rise to litigation concerning that conduct ("specific jurisdiction") or through general and repeated interactions that subject the party to the jurisdiction of the forum state for any type of claim ("general jurisdiction"). *See, e.g., Fox v. Fox*, 2014 VT 100, ¶ 27 (discussing both types of jurisdiction). There can be no argument that this litigation arises out of any purposeful conduct of Defendant Sanders that occurred in California. This

8

case concerns only a Vermont parcel of land. As a result, California cannot claim specific jurisdiction over Defendant Sanders.

Nor does the Court believe that Defendant Sanders' contacts with California over the last eight years are so prevalent as to subject him to that state's general jurisdiction. Courts examining this type of jurisdiction have typically asked whether a party's contacts have been sufficiently "continuous and systematic" to subject the person to that state's jurisdiction for all purposes. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). In addition, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test" than is employed with regard to specific jurisdiction. *Metro. Life Ins. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

Defendant Sanders' contacts with California fall well short of that benchmark. For the past eight years, the record fails to show that he had a home or residence in California, that he had an office there, or that he stayed there for any extended periods. Defendant Sanders is a musician. The record shows that his only contact with California over the last eight years has been twenty-four trips for musical engagements. For each of those shows, his stay in in California was less than forty-eight hours.

Such fleeting contacts, in the Court's view, do not establish the type of "continuous and systemic" entanglement with the forum state that is necessary to establish general jurisdiction. Indeed, it would "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co.*, 326 U.S. at 316, to allow those brief and

9

sporadic contacts to confer general jurisdiction over Defendant Sanders to the State of California. Since the California court lacked personal jurisdiction over Defendant Sanders, this Court will not give full faith and credit to Default Judgment entered against him.

The Court also determines that the California court lacked the subject matter jurisdiction or competency needed to adjudicate Defendant Sanders' interest in the Property. The California court never had *in rem* jurisdiction over the Property. The only legal connection it ever had to the Property was through its status as communal or quasi-communal property of the marriage between Plaintiff and Defendant McKnight. In that context, the Court had the authority to order parties properly before it to sell or convey the Property. Cal. Fam. Code § 2660.

As set out in Section I above, however, Defendant McKnight validly transferred any interest she had in the Property to Defendant Sanders in 2007. Accordingly, her one-half interest no longer remained a marital asset that could have been adjudicated or transferred at the time Plaintiff obtained the Default Judgment. Whether viewed as a lack of subject matter jurisdiction, Restatement (Second) of Conflict of Laws § 104 (1971), or a lack of competency, *id.* § 105, the California court had no authority to order the transfer of Defendant McKnight's former (and Defendant Sanders' present) interest in the Property at the time of the Default Judgment.

In sum, with regard to Defendant Sanders, the Default Judgment rendered in California is not entitled to full faith and credit and is of no effect. Based on the

10

analysis set out in Section I, Defendant Sanders is entitled to partial summary judgment that he is the legal owner of a one-half interest in the Property.

III.    Defendant McKnight

The case was brought as a declaratory judgment and as a partition action. The record establishes that Defendant McKnight validly transferred her one-half interest in the Property in 2007. Plaintiff is entitled to judgment that Defendant McKnight no longer has any present interest in the Property, and that Plaintiff continues to own a one-half interest in the Property.

No doubt, the record also contains significant evidence that Plaintiff paid a great many of the marital costs that may not have been accounted for as part of the California divorce proceeding. Whether he can still bring those matters before that court or in a separate civil proceeding is unknown. *See supra* note 2. But, such evidence has no relevance in the instant action.

IV.    Conclusion

In light of the foregoing, Plaintiff's motion for summary judgment is granted, in part, and denied, in part. Defendants' motion for partial summary judgment is granted.

This Court's role in this case is to determine the legal owners of the Property, which it has now done, and to engage in the partition process. To that end, Plaintiff and Defendant Sanders shall submit a proposed discovery and alternative dispute resolution schedule to the Court within thirty days. In addition, each side shall submit a memorandum of no more than five pages describing each party's position as to whether Commissioners should be appointed in this case.

11

Lastly, the Court notes that the evidence thus far suggests that Defendant Sanders has not carried his fair share of the costs and expenses associated with the Property. Such matters, if proven, will be addressed and accounted for as part of this partition action between Plaintiff and Defendant Sanders.

Electronically signed on March 09, 2016 at 02:15 PM pursuant to V.R.E.F. 7(d).

_____
Timothy B. Tomasi
Superior Court Judge